UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID A. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-320-DCP |
| | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 27].

Now before the Court is Plaintiff's Motion for Judgment [Doc. 34]. Defendant responded [Doc. 36] in opposition to the Motion, and Plaintiff has filed a Reply [Doc. 37]. The Motion is now ripe for adjudication.

Plaintiff David A. Russell brought this action against the United States Department of Labor ("DOL"), alleging that its decision to deny him benefits under Part E of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), 42 U.S.C. § 7385s-1, is arbitrary and capricious, an abuse of discretion, and otherwise inconsistent with the law. Plaintiff requests that the Court reverse Defendant's decision to deny him benefits, or in the alternative, to remand the claim for further consideration. Accordingly, for the reasons set forth below, the Court finds Plaintiff's Motion [**Doc. 34**] not well taken, and it is **DENIED**.

## I. BACKGROUND

The facts relevant to Plaintiff's Motion for Judgment are as follows.

### A. The History of Plaintiff's Claim

On February 1, 2011, Plaintiff filed a claim for benefits under Part E of the EEOICPA for his chronic obstructive pulmonary disease ("COPD"). [Administrative Record ("AR"), Vol. II at 996-97]. On May 9, 2013, the District Office recommended that Plaintiff's claim be denied because the evidence was insufficient to establish that it was "at least as likely as not" that exposure to a toxic substance at the Oak Ridge facilities was a significant factor in aggravating, contributing, or causing Plaintiff's COPD. [*Id.* at 639].[1] Plaintiff objected to the recommendation, and a hearing was held on July 30, 2013, before the Final Adjudication Branch ("FAB"). [*Id.* at 634-53]. On October 11, 2013, FAB issued an order remanding Plaintiff's claim to the District Office. [*Id.* at 600-05]. FAB explained that the District Office did not explain why a report from Plaintiff's treating physician, Marty Wallace, M.D., ("Dr. Wallace") was given no probative value. [*Id.* at 604-05].

On February 4, 2014, the District Office again recommended that Plaintiff's claim be denied, listing five specific reasons as to why it gave more probative value to the two Contract Medical Consultants' opinions as opposed to Dr. Wallace. [AR, Vol. I at 577-80]. The District Office also noted that Plaintiff had been a patient of East Tennessee Pulmonary Associates since at least October 2009. [*Id.* at 579]. The District Office explained that R. Hal Hughes, M.D., ("Dr. Hughes") with East Tennessee Pulmonary Associates did not indicate that Plaintiff's COPD was

---

[1] The Court observes that the District Office previously recommended denying Plaintiff's COPD claim. *See* [AR, Vol. I at 491]. On June 11, 2012, the Final Adjudication Branch remanded Plaintiff's claim to the District Office in light of new evidence from his treating physician. [*Id.* at 492]. This prior history was not discussed in Plaintiff's Complaint or his Motion, and therefore, the Court will not summarize such actions in detail herein.

caused by occupational exposures until May 31, 2013, and that Dr. Hughes's May 31 diagnosis did not demonstrate knowledge of the frequency or level of Plaintiff's exposure to asbestos. [*Id.*].

Plaintiff objected to the recommendation, and a hearing was held on May 22, 2014. [*Id.* at 523-31, 571]. In a decision dated July 30, 2014, FAB ordered that the case be remanded to the District Office. [*Id.* at 512-15]. FAB explained as follows:

> In instances when the evidence on file is not clear in reference to an employee's occupation, the work processes engaged in, and/or the amount of occupational exposure, a referral to an industrial hygienist is necessary. The Jacksonville district office did not request clarification from an industrial hygienist regarding the nature, extent, and duration of your exposure to toxic substances in the course of your covered DOE subcontractor employment. Instead, the district office provided the CMC [Contract Medical Consultant] with unverified and perhaps erroneous information regarding the nature, extent, and duration of your exposure to toxic substances in the course of your employment. There are no industrial hygiene records in your DOE employment records, and there is no information in your records regarding the nature, duration, or extent of your exposure to toxic substances.

[*Id.* at 514].

In a decision dated March 18, 2015, however, the Director of the Division of Energy Employees Occupational Illness Compensation ("Director"), through her discretionary authority, vacated FAB's decision. [*Id.* at 488-96]. The Director found that Plaintiff's covered employment was twenty-seven (27) months and that the doctors' opinions in this case were based on an overestimate of the covered employment. [*Id.* at 490, 494]. Specifically, the Director noted, "Both Dr. Hughes and Dr. Wallace based their opinions on the premise that [Plaintiff] worked as a carpenter for DOE for 16 years[,] and the CMC/DMCs based their opinions on the district office['s] finding that you had 5 years and 8 months of covered employment." [*Id.* at 494]. In addition, the Director explained that FAB neglected to note that the District Office specifically stated that the case was not appropriate for an industrial hygienist's review. [*Id.*]. The Director

3

instructed FAB to issue a new and final decision concerning Plaintiff's claim of COPD under Part E of the EEOICPA. [*Id.* at 495].

On March 25, 2015, FAB issued a Notice of Final Decision, denying Plaintiff's claim. [*Id.* at 478]. FAB explained that there was "insufficient evidence to establish that exposure to a toxic substance was at least as likely as not a significant factor in aggravating, contributing to, or causing [Plaintiff's] COPD." [*Id.* at 482]. Plaintiff filed a Request for Reconsideration, but it was denied on May 28, 2015. [*Id.* at 457-59, 470].

On October 27, 2015, the Director vacated the March 25 and May 28 FAB orders. [*Id.* at 443-47]. The Director explained as follows:

> As set out above, both the development and adjudication of Mr. Russell's claim for COPD under Part E of EEOICPA has been convoluted for several reasons, such as the recently discovered intermittent nature of his employment as a carpenter for a DOE subcontractor, and the effect this revelation has had on the evidentiary value of the earlier development actions taken by DEEOIC. While I am properly concerned with the amount of time and resources both Mr. Russell and DEEOIC have already expended to reach this point, I have given this matter considerable thought and I am persuaded that the March 25, 2015 denial of Mr. Russell's claim and the May 28, 2015 denial of his request for reconsideration should be vacated.
>
> My most important reason for taking this action is my concern that once DEEOIC has reliably verified that Mr. Russell had worked intermittently as a carpenter in Oak Ridge for an aggregate total of 27 months as detailed previously, the prior development actions that had occurred were essentially discarded as being either of little or no evidentiary value to Mr. Russell's claim. The better option, in my view, would have been for DEEOIC to take that reliable employment evidence and use it as the basis for developing properly supported findings on his exposures, and referring the claim to another CMC for probative medical opinion on causation. Taking these steps would have provided a firmer foundation upon which to base a final decision on Mr. Russell's Part E claim.

4

[*Id.* at 445]. The Director referred Plaintiff's claim to the Cleveland District Office to further develop and to provide a recommendation. [*Id.* at 446]. The Director ordered the District Office to refer the matter to an industrial hygienist for an opinion regarding the level and intensity of Plaintiff's work-related exposures to toxic substances. [*Id.*]. In addition, the Director ordered the District Office to refer Plaintiff's claim to another CMC for an appropriate medical opinion on the purported causal relationship of the exposures to his COPD. [*Id.*].

The industrial hygienist, David Levitt, issued a report on November 19, 2015, and issued an addendum on December 7, 2015. [*Id.* at 349-51, 298-300]. In the November 19 report, Levitt concluded that while Plaintiff worked intermittently as a carpenter at the Oak Ridge Reservation for a total of twenty-seven (27) months, he was "significantly exposed to asbestos and wood dusts." [*Id.* at 350]. Levitt continued that his exposures to both of these agents would have likely been frequent (i.e., a daily basis) and that his exposure to asbestos would have ranged from low to moderate levels, while his exposure to wood dust would have ranged from moderate to high levels. [*Id.* at 351]. With respect to the December 7 report, Levitt reviewed whether it was plausible that Plaintiff would have had significant exposure to crystalline silicon dioxide during his employment. [*Id.* at 298]. Levitt stated that there was no evidence that Plaintiff "engaged in any activities that would have resulted in him being significantly exposed to crystalline silicon dioxide (i.e., sandblasting, mixing and applying drywall compound, mixing dry cement, jackhammering, etc.)." [*Id.* at 299]. He concluded that it was "highly unlikely that [Plaintiff] was significantly exposed to this agent" and that "[a]ny exposures that he might have received would have been incidental in nature (occurring in passing only) and not significant." [*Id.*].

The CMC, Akshay Sood, M.D., ("Dr. Sood") issued a report on December 21, 2015. [*Id.* at 282-89]. Dr. Sood made the following assessments:

> For asbestos exposure to be a significant factor in aggravating, contributing to and/or causing the employee's claimed condition of COPD, the exposure must be of adequate duration, intensity and latency. The latency of the exposure is appropriate (approximately four decades), the duration of exposure is not appropriate (approximately two years) and the intensity of exposure is not appropriate (described as low to moderate). I believe that asbestos exposure was therefore not a significant factor in aggravating, contributing to and/or causing the employee's claimed condition of COPD.
>
> For crystalline silicon dioxide exposure to be a significant factor in aggravating, contributing to and/or causing the employee's claimed condition of COPD, the exposure must be of adequate duration, intensity, and latency. The latency of exposure is approximate (approximately four decades), the duration of exposure is not appropriate (approximately two years) and the intensity of exposure is not appropriate (described as incidental) for crystalline silicon dioxide to be a contributing factor toward COPD risk.
>
> For wood dust to be a significant factor in aggravating, contributing to and/or causing the employee's claimed condition of COPD, the exposure must be of adequate duration, intensity, and latency. The latency of exposure is appropriate (approximately four decades), the duration of exposure is not appropriate (approximately 2 years) and the intensity of exposure is appropriate (described as moderate to high) for wood dust to be a contributing factor toward COPD risk.

[*Id.* at 287-88]. Dr. Sood concluded, "[Plaintiff's] work history and exposure potential does not make it at least as likely as not that exposure to the toxic substance asbestos, wood dust, and/or crystalline silicon dioxide during the course of employment at the DOE facility was a significant factor in causing, contributing to, or aggravating the condition of COPD." [*Id.* at 285].

On January 11, 2016, the Cleveland District Office recommended that Plaintiff's claim be denied. [*Id.* at 262-74]. Plaintiff objected to the recommendation, and a hearing was held on May 12, 2016, before FAB. [*Id.* at 163-200]. Following the hearing, on July 25, 2016, FAB referred the case to Christopher Armstrong, M.D., ("Dr. Armstrong"), the DEEOIC Medical Director, for his opinion concerning the relationship, if any, between Plaintiff's occupational exposure to toxic

substances in the course of his employment at several DOE facilities in Oak Ridge, Tennessee, and his diagnosis of COPD. [*Id.* at 30]. Dr. Armstrong issued his report on July 28, 2016. [*Id.* at 29-30]. Dr. Armstrong opined that Plaintiff's COPD "was not, at least as likely as not, caused, contributed to, or aggravated by his occupational exposure to epoxy adhesives by themselves, or in combination with exposures to asbestos, wood dust, or silica." [*Id.* at 29]. Dr. Armstrong reasoned:

> Asbestos, wood dust, and silica are associated with chronic obstructive pulmonary disease (COPD), but the duration of [Plaintiff's] exposure to these was insufficient to support a causal relationship between his questionable diagnosis of mild COPD and his employment on the Oak Ridge Reservation. Epoxy adhesives are associated with occupational asthma, a reactive airway disease that [Plaintiff] does not have. Furthermore, there is neither a record of significant irritant exposure resulting in respiratory symptoms during his employment, nor a connecting history of respiratory symptoms between the period of his employment and his initial diagnosis of COPD in December 6, 2010.

[*Id.*].

On August 26, 2016, FAB issued a Notice of Final Decision, denying Plaintiff's claim. [*Id.* at 5-15]. In its decision, FAB responded to each of Plaintiff's objections. [*Id.*]. FAB concluded that while the evidence showed that Plaintiff was a DOE subcontractor, who was exposed to several substances during the course of his employment, the medical evidence did not establish that "such exposures were at least as likely as not a significant factor in causing, contributing, or aggravating [Plaintiff's] COPD. [*Id.* at 14]. FAB reasoned that Dr. Sood's and Dr. Armstrong's opinions represent the weight of the medical evidence in the case and hold greater probative value than Dr. Wallace's report. [*Id.*]. Accordingly, FAB denied Plaintiff's claim. [*Id.* at 15].

7

## II. POSITIONS OF THE PARTIES

Plaintiff moves [Doc. 34] the Court to vacate Defendant's decision and to enter judgment in his favor, or in the alternative, to remand the claim for further consideration. In support of his Motion, Plaintiff asserts Defendant's decision is arbitrary and capricious for three primary reasons. First, Plaintiff argues that Defendant's decision is inconsistent with the evidence. Second, Plaintiff asserts that Defendant failed to consider an important aspect of the problem—that is, the combined or synergistic effect of the three toxins at the exposure levels documented by Levitt, the industrial hygienist. Finally, Plaintiff asserts that Defendant failed to follow its own procedures.

Defendant responds [Doc. 36] that its decision is supported by the evidence. Defendant also argues that it adhered to the statutory requirements and programmatic policy when it denied Plaintiff's claim. Defendant requests that the Court grant judgment in its favor and dismiss the Complaint.

Plaintiff replies [Doc. 37] that Defendant continually ignored or contorted the evidence before it in order to reach a conclusion in its favor. Plaintiff asserts that Defendant improperly calculated his covered employment at only twenty-seven (27) months in the face of evidence supporting a much longer history of covered employment. Plaintiff submits that Defendant ignored or contorted its own evidence as to his labor category. Plaintiff continues that Defendant improperly discredited his treating physician's opinion. Finally, Plaintiff argues that Defendant failed to consider the synergistic effect of the toxic exposures.

## III. STANDARD OF REVIEW

Both parties acknowledge that the standard of review is arbitrary and capricious. The Court observes that this standard is codified in 42 U.S.C. § 7385s-6, which provides as follows:

> A person adversely affected or aggrieved by a final decision of the Secretary under this part may review that order in the United States

> district court in the district in which the injury was sustained, the employee lives, the survivor lives, or the District of Columbia, by filing in such court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. The person shall also provide a copy of the petition to the Secretary. Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision. The court may modify or set aside such decision only if the court determines that such decision was arbitrary and capricious.

The arbitrary and capricious standard has been described as "the most deferential standard of judicial review of agency action, upholding those outcomes supported by a reasoned explanation, based upon the evidence in the record as a whole." *Todd v. U.S. Department of Labor*, 187 F. Supp. 3d 824, 826 (W.D. Ky. 2016) (quoting *Mich. Bell. Tel. Co. v. MCI Metro Access Transmission Servs., Inc.*, 323 F.3d 348, 354 (6th Cir. 2003)). A plaintiff must establish that the decision "has no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quoting *Coal. For Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 425, 475 (6th Cir. 2004)). "Under this deferential standard, when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Cox v. Standard Ins. Co.,* 585 F.3d 295, 299 (6th Cir. 2009).

## IV. ANALYSIS

The primary issue before the Court is whether Defendant's decision to deny Plaintiff's claim was arbitrary and capricious. Accordingly, for the reasons explained below, the Court finds that Defendant's decision was not arbitrary and capricious.

As mentioned above, Plaintiff has raised three primary objections to Defendant's decision. The Court will address each objection separately.

## A. Evidence Support Defendant's Decision

Plaintiff asserts that Defendant's decision is not supported by the evidence in this case. Specifically, Plaintiff argues that Defendant improperly gave greater weight to the employment cards over the information in the Oak Ridge Institute for Science and Education ("ORISE") database by finding that Plaintiff worked for twenty-seven (27) months instead of forty (40) months. Further, Plaintiff argues that Defendant's decision is arbitrary and capricious because it improperly isolated Plaintiff's potential toxic exposure to only three toxins and that it utilized a more restrictive labor category than what is supported by the evidence.

Defendant responds that Plaintiff ignores FAB's explanation for calculating his covered employment. In addition, Defendant states that FAB explained that in light of the evidence and in the purview and expertise of the agency, another labor category was more appropriate. Defendant explains that, in any event, FAB considered and addressed whether there was a reasonable likelihood that Plaintiff was exposed to the broader range of toxins and whether such toxins were linked to COPD.

Courts should not disturb an agency's factual findings unless such findings are not supported by substantial evidence. *See Steeltech, Ltd. v. U.S. E.P.A.*, 273 F.3d 652, 657 (6th Cir. 2001). Further, "[t]he court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

In the instant matter, FAB found that Plaintiff worked as a subcontractor for the following periods: November 5 to December 20, 1968; February 17 to July 18, 1969; May 30, 1974, to March 26, 1975; July 26, 1976, to January 14, 1977; February 21 to July 1, 1977; and May 5 to June 6, 1980. [AR, Vol. I at 14]. It concluded as follows:

> The contemporaneous employment cards provided by the Department of Energy clearly list the dates you were hired at Oak Ridge, along with the corresponding termination dates for each period of employment. The aggregate period of employment based on these records is approximately 27 months. As for your authorized representative's belief that the dates in the Oak Ridge Institute for Science and Education (ORISE) database actually result in 40 aggregate months of employment, I note that the ORISE database is a secondary source that contains data obtained and transcribed from primary personnel documents, and the hire and termination dates listed in the ORISE database for you do not conform with the hire and termination dates on the employment cards for you that are in the case file. I also note that your authorized representative has not provided any evidence to support the allegation that your subcontractor employment began in 1966. I therefore find no basis to conclude that the period of your covered employment has been incorrectly calculated.

[*Id.* at 7].

The Court finds that FAB's reliance on the employment cards is not arbitrary and capricious. Here, FAB explained why it relied on the employment cards over the ORISE database, noting that the information in the ORISE database is transcribed from primary personnel documents and that the information contained therein did not conform with the dates on the employment cards. Moreover, as the Director previously explained, there were obvious mistakes in the ORISE database. For instance, in the March 18, 2015 Order, the Director noted that the printout from the ORISE database was incorrect because there were two consecutive "HIRE" dates and two consecutive "TERM" dates. [*Id.* at 489]. The Court also observes that the ORISE database states that Plaintiff was hired on November 5, 1968, terminated December 20, 1969, and hired again on February 17, 1969. [*Id.*]. Plaintiff argued at the May 2016 hearing that his total covered employment was forty (40) months. FAB considered this argument and decided to rely on the employment cards for the reasons explained above. The Court does not find that FAB's decision is arbitrary and capricious. Further, FAB emphasized in its decision that Plaintiff did not

provide any evidence to support the allegations that he began work in 1966, and there is no evidence before the Court to support such allegations. Accordingly, the Court finds Plaintiff's argument not well taken.

Plaintiff also asserts that Defendant relied on the wrong labor category in determining the toxins that he was exposed to during his covered employment. Plaintiff continues that the Statement of Accepted Facts ("SOAF") identifies his labor category as "Carpenter" without further limitation and that his employment cards from Rust Engineering identify him as a "Carpenter." Plaintiff asserts that the only reference to "Carpenter-Construction" found in the record are the assertions contained within the recommended and final decisions. Plaintiff submits that Defendant relies on the employment cards for the purpose of hire and termination dates, yet it ignores the same employment cards to show that his title is "Carpenter." Plaintiff continues that given the more restrictive labor category, Defendant improperly isolated his potential toxic exposures to only three toxins.

Defendant responds that FAB considered Plaintiff's argument but explained that the labor category, "Carpenter," pertained to carpenters who worked in permanent positions. Defendant states that, in any event, FAB considered and addressed whether there was a reasonable likelihood that Plaintiff was exposed to the broader range of toxins.

The Court has considered Plaintiff's argument, but the Court does not find Defendant's decision arbitrary and capricious. In FAB's decision, it explained that in order to determine whether an employee was exposed to a toxic substance, the record must contain evidence showing that "such substance was present at the facility where the employee worked, that there was a reasonable likelihood for employee exposure, and that the employee came into contact with such substance." [*Id.* at 9] (quoting Federal (EEOICPA) Procedural Manual, Chapter 2-700.2a

provide any evidence to support the allegations that he began work in 1966, and there is no evidence before the Court to support such allegations. Accordingly, the Court finds Plaintiff's argument not well taken.

Plaintiff also asserts that Defendant relied on the wrong labor category in determining the toxins that he was exposed to during his covered employment. Plaintiff continues that the Statement of Accepted Facts ("SOAF") identifies his labor category as "Carpenter" without further limitation and that his employment cards from Rust Engineering identify him as a "Carpenter." Plaintiff asserts that the only reference to "Carpenter-Construction" found in the record are the assertions contained within the recommended and final decisions. Plaintiff submits that Defendant relies on the employment cards for the purpose of hire and termination dates, yet it ignores the same employment cards to show that his title is "Carpenter." Plaintiff continues that given the more restrictive labor category, Defendant improperly isolated his potential toxic exposures to only three toxins.

Defendant responds that FAB considered Plaintiff's argument but explained that the labor category, "Carpenter," pertained to carpenters who worked in permanent positions. Defendant states that, in any event, FAB considered and addressed whether there was a reasonable likelihood that Plaintiff was exposed to the broader range of toxins.

The Court has considered Plaintiff's argument, but the Court does not find Defendant's decision arbitrary and capricious. In FAB's decision, it explained that in order to determine whether an employee was exposed to a toxic substance, the record must contain evidence showing that "such substance was present at the facility where the employee worked, that there was a reasonable likelihood for employee exposure, and that the employee came into contact with such substance." [*Id.* at 9] (quoting Federal (EEOICPA) Procedural Manual, Chapter 2-700.2a

(November 2015)). Further, FAB explained that a "reasonable likelihood of exposure exists when a substance was used 'during the process involved as part of the employee's job duties and exposure routes.'" [*Id.*] (quoting Federal (EEOICPA) Procedural Manual, Chapter 2-700.2b (November 2015)).

FAB continued that DOL's Site Exposure Matrices ("SEM") is a web-based tool used to assist claims examiners when they are evaluating the existence of a causal link between an individual's covered employment, exposure to toxic substances, and the illness arising out of such exposures. [*Id*. at 10]. FAB explained that Plaintiff's list of toxic exposures was based on a search of "Carpenter" at the Y-12 Plant in the SEM database. [*Id.*]. FAB found, however, that the labor category for "Carpenter" pertains to carpenters who worked in permanent positions for the Department of Energy ("DOE") contract that operated the Y-12 Plant and is potentially associated with exposure to forty-seven (47) separate hazardous chemicals. [*Id.*]. FAB continued that the duties and exposures associated with the "Carpenter" labor category are not equivalent to those carpenters who performed construction work for subcontractors. [*Id.*]. FAB concluded that the appropriate SEM labor category falls under the classification of "Carpenter, Construction," which applies to all covered DOE facilities and is associated with a much shorter list of sixteen (16) potential hazardous chemicals. [*Id.*].

Further, in the administrative proceedings, Plaintiff argued that a search of SEM under the labor category of "Carpenter" showed that he was potentially exposed to the following additional substances: asphalt, asphalt oxidized, beryllium, coal tar pitch volatiles, epoxy adhesives, glutaraldehyde, sulfuric acid and synthetic vitreous fibers. Despite finding that the labor category "Carpenter, Construction" more appropriately described Plaintiff's job duties, FAB considered the above substances in evaluating Plaintiff's claim. FAB maintained that the SEM profile for

"Carpenters, Construction" does not reveal the potential for significant exposure to asphalt, beryllium, glutaraldehyde, or sulfuric acid. [*Id.*]. FAB concluded, "Even if there were evidence of exposure to these substances, there is no established association in SEM between such exposures and COPD." [*Id.* at 10].

FAB continued that there was no other record evidence confirming that Plaintiff was significantly exposed to the above substances. [*Id.*]. FAB then analyzed each toxic substance in conjunction with Plaintiff's testimony at the hearing and Plaintiff's exhibits. [*Id.* at 11-12]. For instance, with respect to asphalt or tar fumes, FAB explained that there was no link in SEM between such substances and COPD. [*Id.* at 10-11]. FAB found that with respect to synthetic vitreous fibers, there was no established link between such exposure and COPD, nor was there evidence that Plaintiff had any significant exposure to this class of substances. [*Id.* at 11]. FAB emphasized that during Plaintiff's testimony, he did not claim that he installed or removed insulation or worked directly with insulation. [*Id.*]. FAB also cited to Plaintiff's exhibit, a journal abstract, and explained that it did not address the specific causal relationship linking synthetic vitreous fibers individually to COPD. [*Id.*].

Moreover, with respect to welding fumes, FAB stated that Plaintiff's testimony that he worked around welders on occasion was not sufficient to establish that he had significant exposure to such fumes during his employment. [*Id.*]. Finally, with respect to epoxy resins, FAB explained that Plaintiff's case was referred to an in-house toxicologist to evaluate the scientific evidence concerning epoxy resin fumes and COPD. [*Id.*]. The toxicologist opined as follows:

> In summary, I opine with reasonable scientific certainty that there is no causal association between occupational exposure to epoxy resins (at the level of exposure experienced by Construction Carpenters at K-25, X-10 and Y-12 during the period of November 5, 1968 and June 6, 1980—27 months) and the development of chronic obstructive pulmonary disease (COPD) diagnosed in

> December 2010 based on the published population-based occupational epidemiology and biomedical literature.

[*Id.* at 12].

The Court has reviewed FAB's decision and does not find that it is arbitrary and capricious. FAB provided a reasonable explanation for why it used the labor category, "Carpenter, Construction," as opposed to "Carpenter." Specifically, FAB reasoned that "Carpenter" pertains to carpenters who worked permanently at the Y-12 Plant. Plaintiff does not argue that this definition is incorrect, nor does he assert that he worked permanently at the Y-12 Plant. In any event, however, FAB considered Plaintiff's claim that he was exposed to additional substances, but it found that they were not linked to COPD or Plaintiff's testimony established that he was not greatly exposed to such substances. Accordingly, the Court finds that FAB provided a reasonable explanation for its decision to categorize Plaintiff's job as "Construction, Carpenter" and finds no reason to disturb FAB's determination.

### B. Combined Effect of the Toxins

Plaintiff argues that Defendant failed to consider an important aspect of the problem when it did not consider the combined, or synergistic, effect of the three toxins at the exposure levels documented by the industrial hygienist. Plaintiff asserts Defendant did not consider the likelihood that this combined effect was a significant factor in aggravating, contributing to, or causing Plaintiff's COPD. Plaintiff states that a careful examination of the synergistic effect of the exposure levels is integral to a proper evaluation of his claim and is required by Bulletin 16-02. Plaintiff maintains that Defendant failed to consider this important aspect of the problem when it adopted the incongruent positions of the industrial hygienist and the CMC.

15

Defendant responds that it did consider the synergistic effect of the toxins that Plaintiff was exposed to during his covered employment and that Plaintiff's assertion is baseless and contrary to the plain evidence in the Administrative Record.

The Court finds that Defendant did properly consider the combined effect of the toxic substances. In its decision, FAB evaluated the relationship between Plaintiff's epoxy exposure and COPD, "as well as any synergistic effect between [Plaintiff's] COPD and exposure to all four substances identified and substantiated in [Plaintiff's] claim." [*Id.* at 12]. FAB explained that the matter was referred to Dr. Armstrong, who concluded as follows:

> [Plaintiff's COPD] was not, at least as likely as not, caused, contributed to, or aggravated by his occupational exposure to epoxy adhesives by themselves, or in combination with exposures to asbestos, wood dust, or silica while working intermittently as a construction carpenter for Rust Engineering, Inc.[,] on the Oak Ridge Reservation for a total of 27.5 months between November 5, 1968, and June 6, 1980.

[*Id.* at 13]. FAB stated that after reviewing all the medical evidence, it does not support a finding that Plaintiff's exposure to epoxy, asbestos, silicon dioxide (crystalline) and wood dust, individually or in combination, was a significant factor in causing, contributing, or aggravating his COPD. [*Id.*].

Contrary to Plaintiff's assertion, Defendant explicitly stated that it considered the synergistic effect of these substances, but based on the medical opinions of Dr. Armstrong and Dr. Sood, it could not conclude that these substances, individually or in combination, were significant factors in causing, contributing, or aggravating Plaintiff's COPD. [*Id.*].

Plaintiff further asserts that Defendant adopted an incongruent position when it accepted both the industrial hygienist's opinion and the CMC opinions. The Court disagrees. Specifically, the industrial hygienist, Levitt, opined that Plaintiff's exposure to asbestos would have likely been

16

frequent (i.e., daily basis) and would have ranged from low to moderate levels; his exposure to wood dust would have likely been frequent (i.e., daily basis) and would have ranged from moderate to high levels; and his exposure to silicon dioxide, crystalline would have been incidental in nature (occurring in passing only) and not significant. [AR, Vol. I at 299, 350]. Dr. Sood summarized Levitt's report and explained that Plaintiff's intensity of exposure was not appropriate for asbestos to be a significant factor with respect to Plaintiff's COPD because his exposure was "low to moderate." [*Id.* at 285-86]. With respect to wood dust, Dr. Sood found that the intensity (moderate to high) was appropriate for wood dust to be a significant factor with respect to Plaintiff's COPD, but the duration was not appropriate given that Plaintiff worked approximately two years. [*Id.* at 285]. FAB relied upon Levitt's report and Dr. Sood's medical opinion, and the Court finds that FAB's decision is not arbitrary and capricious. *See Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) ("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.").

Plaintiff also asserts that Defendant's decision to credit the employment cards over the ORISE database fails to consider an important aspect of the problem because the length of his employment at a covered facility is an essential element of his claim. The Court has addressed this argument above and finds it unnecessary to repeat its findings. Accordingly, the Court finds Plaintiff's arguments not well taken.

### C. Defendant's Procedures

Plaintiff argues that Defendant's decision is arbitrary and capricious because Defendant failed to follow its own procedures. Specifically, Plaintiff asserts that pursuant to Chapter 2-0800(6)(a)(1) of the Procedural Manual, a treating physician should be given greater weight than

17

physicians conducting a file review. Plaintiff states that his treating physician, Dr. Hughes, opined that "it is at least likely as not" that Plaintiff's exposures to dust asbestos, ammonia radiation, beryllium and mercury that occurred from 1966-1982 caused his COPD. Plaintiff maintains that his treating physician's opinion should be given greater weight than the CMCs' opinions on causation.

Defendant responds that it properly weighed the evidence before it. Defendant asserts that its Procedural Manual does not obligate it to accept a treating physician's opinion over that of an independent medical expert. Further, Defendant argues that it acted within its discretion and that it properly followed agency procedure when it determined that the expert opinions of the CMC and Medical Director constituted the weight of the medical evidence in Plaintiff's case.

The Court has considered the parties' arguments and finds Defendant properly weighed the medical evidence in this case. Both parties acknowledge that "[g]enerally, a physician who has physically examined a patient, is knowledgeable of his or her medical history, and has based the opinion on an accurate factual basis, has weight over a physician conducting a file review." [Doc. 35 at 9, Doc. 36 at 17] (citing Federal (EEOICPA) Procedural Manual, Chapter 2-800.6a(1)). Here, Dr. Hughes stated as follows:

> [Plaintiff] now relates occupational exposures to saw dust, asbestos, ammonia, radiation, beryllium, and mercury during his employment at all 3 Oak Ridge plants from 1966-1982 as a carpenter. He erected scaffolding at several demolition projects as well. Based on these prolonged occupational exposures, it is at least as likely as not that his COPD is indeed occupational.

[AR, Vol. II at 621]. In the infancy of Plaintiff's claim, Defendant repeatedly explained that Dr. Hughes based his opinion on an incorrect number of years of employment. The Court finds that Defendant did not err in calculating Plaintiff's covered employment, and Plaintiff has not cited to any evidence that Dr. Hughes reevaluated Plaintiff's claim after Defendant determined that twenty-

18

seven (27) months was the correct length of employment. In the final decision, FAB explained that the medical opinions of Dr. Sood and Dr. Armstrong were based on a full review of the relevant medical and factual evidence, provided an accurate occupational history of Plaintiff's employment at Oak Ridge, and contained rationalized medical opinions addressing the relationship between Plaintiff's documented exposures and COPD. Accordingly, the Court finds Defendant provided reasoned explanations for its decision to rely on the CMCs' opinions and that Plaintiff has failed to establish that Defendant's explanations are arbitrary and capricious.

V. **CONCLUSION**

Accordingly, for the reasons cited above, the Court finds Plaintiff's Motion for Judgment [**Doc. 34**] is not well taken, and it is **DENIED**.

ORDER ACCORDINGLY:

Debra C. Poplin
United States Magistrate Judge